h GREMILLION, Judge.
In this case, the plaintiffs, Leander and Gloria Williams, appeal the verdict of the jury finding no liability on the part of Dr. Jesus Garcia, one of several named defendants. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
In the early morning hours of July 7, 1994, Troy Williams fell from the back of a slowly moving pickup truck and struck his head on the concrete pavement in a Wal-Mart parking lot in St. Martinville, Louisiana. Troy was transported by ambulance to Dauterive Hospital in New Iberia, arriving at 3:16 a.m., where he was placed under the care of Dr. Garcia, the attending emergency room physician. A skull x-ray and CT scan taken at 5:00 p.m. the same day revealed a brain injury for which it was felt Troy needed specialized care. Thus, while under the care of a Dr. Sagr-era, Troy was transferred to Lafayette *765 General Medical Center shortly before 1:00 a.m. on July 8,1994. Later that same day at 5:45 p.m., Troy went into respiratory arrest and fell into a coma. On July 13, 1994, Troy’s parents agreed to the removal of life sustaining machines, and Troy died as a result of his closed-head injury.
Pursuant to the Louisiana Medical Malpractice Act, this action was first submitted to the medical review panel which rendered its opinion on April 24, 1997. A wrongful death suit was filed on July 23, 1997, by the Williams seeking damages from numerous defendants for Troy’s death. The jury rendered a verdict in favor of all the defendants on February 5, 1999, finding Troy 100% at fault, and that Dr. Garcia did not breach the standard of care attributable to an emergency room physician. Thus, the jury did not consider whether Dr. Garcia’s actions were a cause |gof Troy’s death. The trial court’s judgment'was signed on February 9, 1999, and the Williams timely appealed the verdict in favor of Dr. Garcia.
LAW
A court of appeal may not set aside a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
Id. at 844.
Though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. “Where two permissible views of the evidence exist, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong.” Stobart v. State, Through DOTD, 617 So.2d 880, 883 (La.1993). “The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.” Id.
ISSUES
The Williams assert that the jury committed manifest error in failing to find that Dr. Garcia breached the standard of care and was, thus, negligent in his treatment of Troy, and in failing to even consider whether Dr. Garcia’s breach of the I ^standard of care caused harm to him.
DISCUSSION
In a medical malpractice action, the plaintiffs burden and the standard of care required for a physician are set out in La.R.S. 9:2794, which states:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq .... the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and dili *766 gence, along with this best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
[[Image here]]
C. In medical malpractice actions the jury shall be iiistructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician.... The jury shall be further instructed that injury alone does not, raise a presumption of the physician’s ... negligence.
On appeal, the Williams argue that Dr. Garcia breached the standard of care and was, thus, negligent for failing to order a CT scan of Troy’s head while he |4was in the emergency room at Dauterive Hospital. The Williams argue that, had Dr. Garcia ordered the CT scan, procedures could have been instituted that would have saved his life.
We agree that the jury committed manifest error in failing to find that Dr. Garcia breached the standard of care; however, after a de novo review of the record, we find that Dr. Garcia’s breach of the standard of care was not the proximate result or cause of Troy’s injuries and subsequent death. Thus, the jury’s assessment of no liability on the part of Dr. Garcia is affirmed.
BREACH OF THE STANDARD OF CARE
From our review of the record, we find that reasonable people could not have concluded that Dr. Garcia did not breach the standard of care when no evidence was offered to support this contention. Thus, we must redetermine the facts de novo and render a judgment on the merits. Rosell, 549 So.2d 840 (La.1989).
Admittedly, the jury verdict form in the instant case did not simplify the deliberation process the jury undertook in reaching its decision. The questions regarding Dr. Garcia’s liability read as follows:
A. Do you find by a preponderance of the evidence that Dr. Jesus Garcia was negligent in his treatment of Troy Williams?
YES_NO_
If your answer to Question A is “no”, go to Question 2.
If your answer to Question A is “yes”, go to Question B.
B. Do you find by a preponderance of the evidence that Dr. Jesus Garcia’s negligence caused Troy Williams to lose a chance of survival?
YES_NO__
The jury marked “no” in response to Question A and did not mark an answer for |,^Question B. While negligence encompasses the concept of cause, it is clear from the presence of the second question and its position on the form, that the first question is actually referring to breach of the standard of care. Thus, we interpret Question A to refer only to whether Dr. Garcia breached the standard of care of an emergency room physician in failing to order a CT scan for Troy.
“The applicable standard of care is determined from the particular facts of a case, including evaluation of the expert testimony.” Hebert v. LaRocca, 97-433 (La.App. 3 Cir. 12/10/97); 704 So.2d 331, 337. The opinions of medical experts are necessary to the determination of the applicable standard of care and the inquiry as to whether that standard was breached. James v. Michael E. Gordon, D.D.S., 95-1472 (La.App. 3 Cir. 12/4/96); 690 So.2d 787, writ denied, 97-0756 (La.5/01/97); 693 So.2d 738. A doctor’s professional judgment and conduct is to be evaluated in terms of reasonableness under the then existing circumstances, not in terms of results or in light of subsequent events. Charpentier v. Lammico Ins. Co., 606 So.2d 83 (La.App. 3 Cir.1992).
The record reflects that, other than Dr. Garcia’s own testimony, there was no evi *767 dence to suggest that he did not breach the standard of care. The Williams appropriately rely on the medical review panel’s finding that Dr. Garcia failed to comply with the appropriate standard of care by fading to order a CT scan after the appearance of symptoms indicating one was in order. Dr. Leland C. Lenahan, an expert in emergency room medicine and a member of the medical review panel that rendered a decision in this case, testified as to the findings of the panel. Specifically, the panel found that the “standard of care would indicate that a CT should have been | (¡performed immediately on a patient exhibiting emesis, altered gait, and lethargy, as described by nurses, after head injury.” Dr. Lenahan further testified that he felt there were numerous indications that a CT scan should have been performed on Troy while he was in the care of Dr. Garcia. Thus, in the opinion of Dr. Lenahan and the medical review panel, Dr. Garcia breached the standard of care when he failed to order a CT scan when the signs of brain injury indicated that one was in order. Only Dr. Garcia himself testified that he did not breach the standard of care. Clearly, the greater weight must be given to the non self-serving testimony of the medical review panel.
Dr. Marco T. Eugenio, an expert in the field of neurosurgery, also testified that Dr. Garcia should have ordered a CT scan when the classic and significant signs of head injury were present — namely vomiting and lethargy. Dr. Eugenio stated that a CT scan is the standard used in head injury cases and the best tool available to evaluate the brain. Based on the entirety of the record, we find that the jury was clearly wrong in failing to find Dr. Garcia breached the standard of care.
CAUSATION — LOST CHANCE OF SURVIVAL
The last element of the malpractice analysis is proximate result or causation. La.R.S. 9:2794(A)(3). Our review of the record indicates that, despite Dr. Garcia’s breach of the standard of care, causation was not proven by a preponderance of the evidence. The expert medical testimony presented at trial proved that an earlier CT scan would not have affected the management or outcome of Troy’s situation.
Dr. Donlin Long, chief of neurosurgery at John Hopkins Medical Center in Baltimore, Maryland, testified that a CT scan taken earlier would not have affected |7the treatment administered to Troy. Dr. Long stated that the purpose for the CT scan is to define the problem and determine if an operation is needed. Dr. Long was of the opinion that no operation was going to save Troy’s life, and that his fate was sealed the moment his head hit the concrete in the Wal-Mart parking lot.
Dr. James Rose, an expert in neurological surgery at Baylor College of Medicine in Houston, Texas, testified likewise. He stated that there was no medical treatment that could have been provided to Troy from the time of his initial injury that would have increased his chance of survival. Further, Dr. Rose testified that an earlier CT scan would have had no significance in the neurosurgical management of Troy’s care, and that it would not have made a difference in the ultimate outcome of a brain injury such as the one suffered by him.
Dr. Joan Wojak, an expert neuroradiologist, further testified that there was no medical treatment that could have been provided for Troy from the time of his initial injury in the Wal-Mart parking lot until the time of the first CT scan, because Troy’s death was inevitable, regardless of the medical treatment provided to him.
Even Dr. Lenahan and the medical review panel felt that the failure to obtain an earlier CT scan did not affect the ultimate outcome. The opinion rendered by the medical review panel stated that the failure to obtain a CT scan earlier in the day did not cause or increase injury to Troy.
Moreover, the Williams’ own expert, Dr. Eugenio, testified that improvement from *768 this type of brain injury is “very rare,” and that there was a “likely possibility of having death” with this type of injury.
1 «CONCLUSION
Considering all the evidence, we find that the jury was clearly wrong in failing to find that Dr. Garcia breached the standard of care attributable to an emergency room physician by failing to order a CT scan for Troy while he was under his care in the emergency room at Dauterive Hospital. However, we find that the Williams failed to prove by a preponderance of the evidence that Dr. Garcia’s failure to order a CT scan was a cause of Troy’s ultimate death. Therefore, the judgment of the trial court is affirmed and the costs of this appeal are to be paid by the Williams.
AFFIRMED.