690 So.2d 787 (1996)
Mattalea P. JAMES, PlaintiffAppellant,
v.
Michael E. GORDON, D.D.S., DefendantAppellee.
No. 95-1472.
Court of Appeal of Louisiana, Third Circuit.
December 4, 1996.
Rehearing Denied February 20, 1997.[*]
Writ Denied May 1, 1997.
*788 Glen D. Vamvoras, Lake Charles, for Mattalea P. James.
Edward E. Rundell, Alexandria, for Michael E. Gordon D.D.S.
Before KNOLL, WOODARD and DECUIR, JJ.
KNOLL, Judge.
This is a dental malpractice case. Mattalea P. James sued her family dentist, Dr. Michael E. Gordon, for complications that occurred after the extraction of her lower, left wisdom tooth. After a four-day jury trial, the jury returned a verdict in favor of Dr. Gordon. Thereafter, the trial judge signed a judgment in conformity with the jury verdict.
James appeals, contending that: (1) the judge ad hoc abused his discretion in failing *789 to recuse the trial judge; (2) the trial judge erred in failing to properly instruct the jury on the doctrine of res ipsa loquitur; and, (3) the jury verdict in favor of Dr. Gordon was manifestly erroneous. We affirm.

FACTS
James contacted Dr. Gordon's dental office in Oakdale on the morning of March 27, 1989, complaining of severe pain. In response to James' obvious dental problem, the staff at the dental office instructed James that Dr. Gordon would work her into his afternoon appointments.
When Dr. Gordon conducted his examination, James complained that her wisdom tooth hurt when she bit down. Dr. Gordon x-rayed the tooth, the left, third molar, and determined that an extraction was required. After properly anesthetizing James, Dr. Gordon sectioned the tooth into two pieces. Because the roots broke during the extraction, Dr. Gordon had to use root picks to remove the fragmented root. He stated that following the removal of the tooth parts, Dr. Gordon placed the tooth pieces together on his dental table and determined that he had removed all of the tooth.
After the extraction, James developed numbness and pain on the left side of her face near the extraction site. She consulted Dr. Gordon for several months for this and other dental problems and subsequently consulted Dr. David Carlton, an oral surgeon. Dr. Carlton examined James and referred her to a specialist in oral surgery, Dr. Demarcus Smith. Ultimately, James was diagnosed with a neuroma to the left alveolar nerve as the result of irritation caused by a 1-1 ½ mm piece of bone in the inferior alveolar canal. Dr. Smith performed a left inferior alveolar neurolysis decompression and unilateral buccal cortical osteotomy of the left mandible in October of 1990. Even though the surgery lessened the pain, James was still suffering a loss of sensation in her lower left lip at the time of trial.
James timely convened a medical review panel to consider whether Dr. Gordon committed dental malpractice. After the medical review panel rendered a unanimous opinion in favor of Dr. Gordon, James filed suit against Dr. Gordon and his liability insurer, CNA Insurance Company. After a four-day trial, the jury found that Dr. Gordon did not commit dental malpractice.

RECUSAL OF DISTRICT COURT JUDGE
James first contends that the judge ad hoc erred when he failed to recuse the Allen Parish district judge from this malpractice case. She argues that the district court judge was a material witness.
La.Code Civ.P. art. 151(A) provides that "[a] judge of any court, trial or appellate, shall be recused when he is a witness in the cause."
James contends that the trial court judge, John P. Navarre, was a witness in the cause. After James filed the motion for recusal, Judge Navarre had the motion transferred to Judge Preston Aucoin for hearing. Judge Aucoin heard testimony from Judge Navarre and Dr. Gordon.
Judge Navarre testified that during the pre-trial stages of this litigation, Dr. Gordon gave him a copy of a dental X ray that he had been ordered to produce. He testified that he ran into Dr. Gordon at a chance meeting in Oakdale. At that time, Dr. Gordon asked him to place the X ray into the court record pursuant to the order to produce. Judge Navarre misplaced the X ray and it was never found. At the hearing on the motion to recuse, Judge Navarre testified that he did not know the content of the X ray or when the X ray was taken.
Dr. Gordon also testified at the hearing to recuse. Dr. Gordon stated that in the pre-trial course of this litigation he produced four dental X rays. As far as he knew, the X ray that he gave to Judge Navarre was a copy of one of these four. Thus, he testified that in actuality, there was no missing X ray. We note that four X rays were produced at the hearing on the motion to recuse and were used at the subsequent jury trial. After carefully reviewing the facts of this case, we cannot say that the judge ad hoc erred in denying the motion to recuse Judge Navarre. *790 Clearly, he was not a material witness in this cause.
We note that although the hearing on the motion to recuse Judge Navarre was held well in advance of trial on the merits, James did not seek supervisory relief and, instead, proceeded to trial with Judge Navarre. Furthermore, the record shows that at no time during the trial on the merits did James call or attempt to call Judge Navarre as a witness. Therefore, we find that issue is now moot. See Jackson v. Tri-State Elevator Co., Inc., 398 So.2d 199 (La.App. 3 Cir.); writ denied, 400 So.2d 905 (La.1981).

MANIFEST ERROR
James contends that the jury was manifestly erroneous in its determination that Dr. Gordon did not commit dental malpractice. She argues that such a decision was contrary to the law and the evidence presented to the jury.
Proof of the standard of care is the first of a three-prong burden of proof in a dental malpractice case. In this regard, La. R.S. 9:2794(A) provides pertinently as follows:
A. In a malpractice action based on the negligence of ... a dentist licensed under R.S. 37:751 et seq., ... the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by ... dentists ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by... dentists ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; [and]
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
The law and jurisprudence does not require perfection or absolute precision in medical diagnosis and treatment. A general dentist is not required to exercise the highest degree of care possible, but he must exercise the degree of skill ordinarily employed by his professional peers under like circumstances. He must use reasonable care along with his best judgment in the exercise of that skill. Matthews v. Louisiana State University Medical Center in Shreveport, 467 So.2d 1238 (La.App. 2 Cir.1985). A doctor's professional judgment and conduct is to be evaluated in terms of reasonableness under the then existing circumstances, not in terms of results or in light of subsequent events. Charpentier v. Lammico Insurance Co., 606 So.2d 83 (La.App. 3 Cir.1992); Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
An unsuccessful course of treatment is not per se an indication of malpractice. The opinions of medical experts are necessary to the determination of the applicable standard of care and the inquiry as to whether that standard was breached. These opinions, while not controlling, are persuasive. Ultimately, the fact finder must evaluate conflicting expert opinions in relation to all the circumstances of the case. Gibson v. Bossier City General Hospital, 594 So.2d 1332 (La.App. 2 Cir.1991) and the cases cited therein. When the experts' opinions are in conflict concerning compliance with the applicable standard of care, the trial court's determinations on this issue will be granted great deference. It is the sole province of the trier of fact to evaluate the credibility of such experts and their testimony. Charpentier, 606 So.2d 83.
The jurisprudence is well settled that where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review, even though the reviewing court may feel that its own evaluations *791 and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where the fact finder chooses between two permissible views of the evidence, its choice cannot be manifestly wrong. Id. We are further mindful that when the trier of fact's conclusions are based upon credibility determinations, the manifest error standard requires us to give great deference to the trier of fact. Melancon v. LaRocca, 94-639 (La. App. 5 Cir. 1/31/95); 650 So.2d 371 Accordingly, we must keep in mind that if the trier of fact's determinations are reasonable in light of the entire record, as a reviewing court we may not reverse even if we are convinced that if we had been the trier of fact, we would have weighed the evidence differently. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). Ultimately, therefore, the issue for us to resolve is not whether the jury was wrong, but whether the jury's conclusions were reasonable in light of the entire record. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
In the case sub judice, the jury was presented with expert testimony from the dental community on the standard of care that Dr. Gordon owed James. Able trial counsel explored the full scope of Dr. Gordon's duty, namely: his record keeping practices; whether Dr. Gordon should have referred the extraction to an oral surgeon because of the morphology of the tooth; whether accessibility to the wisdom tooth should have mandated referral of James to an oral surgeon; whether bleeding at the extraction site overly hindered Dr. Gordon's extraction of all of the root and called for a referral of the patient to an oral surgeon to complete the procedure; whether Dr. Gordon should have used a different procedure to remove the root tips; whether post-operative X rays should have been taken; and whether Dr. Gordon unduly delayed in his referral of James to an oral surgeon after completion of the extraction.
Dr. Barney Harper, Dr. Gerald Mayeux, and Dr. John J. Campo, Jr., the three members of the medical review panel, testified at trial. Each of these dentists practiced as general, family dentists in communities in Central Louisiana. Although the full panoply of Dr. Gordon's treatment of James was fully explored, the crux of James' case was whether Dr. Gordon should have even attempted to extract her left, lower wisdom tooth because of the structure of the tooth and its roots.
Dr. Harper stated that although he originally decided that Dr. Gordon was not guilty of dental malpractice, he no longer held that opinion because the preoperative X rays showed that it was the type extraction that required an oral surgeon. Despite Dr. Harper's change of opinion, both Dr. Mayeux and Dr. Campo opined that Dr. Gordon did not commit malpractice by his failure to refer James to an oral surgeon for the extraction. Although they agreed that the extraction may have been complicated, they nonetheless concluded that the extraction was one that was within the expertise of Dr. Gordon. They further opined that Dr. Gordon met the standard of care that the local dental community would have provided for an extraction such as this. After carefully reviewing the conflicting testimony of the various experts, we cannot say that the jury was manifestly erroneous in finding that Dr. Gordon did not commit dental malpractice.
In an ancillary argument, James contends that the trial judge erred in giving the jury an improper instruction on res ipsa loquitur. In particular, James argues that the trial judge failed to instruct the jury that res ipsa loquitur shifts the burden of proof to the defendant to prove either that he has not been negligent or that the damages were caused by other factors or intervention. To the contrary, Dr. Gordon contends that although an incomplete res ipsa loquitur instruction may have been given, this was harmless error since the facts of the case did not support the application of res ipsa loquitur.
In Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2 Cir.1984), the Second Circuit explained res ipsa loquitur as follows:
Res ipsa loquitur is not a substantive legal tenet, but rather an evidentiary doctrine under which a tort claim may be proved by circumstantial evidence. This evidentiary *792 doctrine is applicable where defendant has actual control of the agency, instrumentality or conditions which caused plaintiff's injuries; the evidence as to the true cause of plaintiff's loss is more readily accessible to defendant than plaintiff; and the accident is of a kind that does not occur in the absence of negligence and/or the circumstances attending the accident create an inference of negligence on the part of defendant. Under the principle of res ipsa loquitur, the defendant's negligence is inferred because, under the facts shown, the inference that defendant's negligence caused plaintiff's harm is probable and more plausible than any other explanation propounded. It is crucial to note that, where the doctrine of res ipsa loquitur is properly applicable, the plaintiff need not establish the exact manner in which he was injured, or the precise act or event which precipitated his injury.
Id. at 655. (Citations omitted).
Furthermore, it is well settled that res ipsa loquitur is a rule of circumstantial evidence and is inapplicable when facts and direct evidence are available to explain the activity leading to the injury. Accordingly, the doctrine should apply only when the facts indicate the most plausible explanation for the plaintiff's injury is the negligence of the defendant and when there is no direct evidence to explain the injury. White v. McCool, 395 So.2d 774 (La.1981).
In the case sub judice, we do not find that James established that the injury which she received is one which would not have occurred in the absence of Dr. Gordon's negligence. Dr. Mayeux, one of the medical review panelists, and Dr. David Carlton, an oral surgeon who examined James after Dr. Gordon's extraction, directly addressed this issue. Both stated that the injury that James suffered is a rare, but recognized complication that could occur without the negligence of the dentist. Dr. Carlton opined that the injury James suffered could have occurred even if an oral surgeon had performed the extraction.
After carefully reviewing the record and the arguments presented, we find that the failure to give a complete res ipsa loquitur instruction to the jury did not affect the jury verdict. Simply stated, as shown by the medical evidence, this is not the type of accident that "does not occur in the absence of negligence." Therefore, we conclude that there is no merit to James' contention.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Mattalea P. James.
AFFIRMED.
NOTES
[*] Hon. Jeannette Theriot Knoll participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.