NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-432

ALICIA LESTER

VERSUS

DR. ROBERT LEVY, ET AL.

**********

APPEAL FROM THE
PARISH OF RAPIDES
ALEXANDRIA CITY COURT, NO. 101,572
HONORABLE RICHARD E. STARLING JR., CITY COURT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED.

Paul B. Lauve
Benjamin P. Mouton
McGlynn, Glisson & Koch, APLC
P.O. Box 1909
Baton Rouge, LA 70821-1909
Counsel for Plaintiff/Appellant:
    Alicia Lester

**James A. Bolen  Jr.**
**Donna Johnson Duplechian**
**Bolen, Parker, & Brenner, LTD**
**P. O. Box 11590**
**Alexandria, LA 71315-1590**
**Counsel for Defendants/Appellees:**
      **OMS National Insurance Company**
      **Dr. Robert Levy**

**PICKETT, Judge.**

The plaintiff, Alicia Lester, appeals a judgment of the trial court in favor of the defendants, Dr. Robert Levy and OMS Insurance Company, dismissing her suit with prejudice and at her expense. We affirm the judgment of the trial court.

## FACTS

In April 2003, the plaintiff, Alicia Lester, consulted a general dentist, Dr. Kurt Gauthier, for a number of dental problems. After taking x-rays, including a panorex, and examining Mrs. Lester, Dr. Gauthier presented her with several treatment plans. Mrs. Lester decided on a plan which called for salvaging and restoring some teeth, extracting others, and the fitting of one (or more) partial plate(s). Treatment was begun. The first week in June 2003, the plaintiff was referred to Dr. Robert Levy, an oral surgeon, to have three teeth extracted. This procedure was uneventful.

At her visit to Dr. Gauthier on October 15, 2003, the plaintiff was, once again, referred to Dr. Robert Levy. This time for the extraction of teeth numbers 5, 12, and 13. The procedure was scheduled for October 20, 2003. The plaintiff was provided with prescriptions for an antibiotic and an analgesic, a referral slip identifying the teeth to be extracted, and her panorex x-rays, which she was to deliver to Dr. Levy. Upon arriving at Dr. Levy's office on October 20, 2003, the plaintiff did not have her referral slip. What took place at that time is in dispute; however, the end result was Dr. Levy extracting teeth numbers 3, 15, and 16. That action prompted the filing of this medical malpractice action.

1

## LAW AND DISCUSSION

The law applicable to a claim of dental malpractice was discussed by our colleagues of the second circuit in *Britt v. Taylor*, 37,378, p. 5 (La.App. 2 Cir. 8/20/03), 852 So.2d 1128, 1132:

> La. R.S. 9:2794(A) provides that a plaintiff in a malpractice action shall have the burden of proving the following:
>
> > (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by . . . dentists . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances . . . .
>
> > (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
>
> > (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
>
> The burden set forth in La. R.S. 9:2794(A) requires the plaintiff to prove the applicable standard of care, the breach of the standard of care, and the causal connection between the breach and the resulting injuries. *Orea v. Brannan*, 30,628 (La.App.2d Cir. 6/24/98), 715 So.2d 108; *Hinson* [v. *Glen Oak Retirement Home*, 34,281 (La.App. 2 Cir. 12/15/00), 774 So.2d 1134].
>
> The fact that an injury occurred does not raise a presumption of negligence. La. R.S. 9:2794(C); *Yuska v. HCA Health Services of Louisiana, Inc.*, 28,878 (La.App.2d Cir. 12/11/96), 684 So.2d 1093. Moreover, a physician (or dentist) is not held to a standard of absolute precision. The conduct of the dentist is not evaluated on the basis of hindsight or in light of subsequent events, but it is evaluated in terms of reasonableness under the then-existing circumstances. *Yuska, supra*; *Iseah v. E.A. Conway Memorial Hospital*, 591 So.2d 767 (La.App. 2d Cir.1991),*writ denied*, 595 So.2d 657 (La.1992).

Furthermore, in *Magos v. Feerick*, 96-686, pp. 5-7 (La.App. 3 Cir. 12/26/96), 690 So.2d 812, 816-17, *writ denied*, 97-755 (La. 5/1/97), 693 So.2d 737, this court noted the following:

> As this court stated in *Herpin v. Witherspoon*, 95-370, p. 10 (La.App. 3 Cir. 11/2/95); 664 So.2d 515, 521:
>
> > The opinions of medical experts are necessary to the determination of the applicable standard of care and the inquiry as to whether that standard was breached. These opinions, while not controlling, are persuasive. Ultimately, the factfinder [sic] must evaluate conflicting expert opinions in relation to all the circumstances of the case. *Gibson v. Bossier City General Hospital*, 594 So.2d 1332 (La.App. 2 Cir.1991) and the cases cited therein. When the experts' opinions are in conflict concerning compliance with the applicable standard of care, the trial court's determinations on this issue will be granted great deference. It is the sole province of the trier of fact to evaluate the credibility of such experts and their testimony. *Charpentier*, 606 So.2d 83.
>
> > . . . .
>
> An unsuccessful course of treatment is not a *per se* indication of malpractice. *Herpin*, 664 So.2d 515. As we stated in *Charpentier v. Lammico Insurance Co.*, 606 So.2d 83 (La.App. 3 Cir.1992), a dentist's professional judgment and conduct is to be evaluated in terms of reasonableness under then existing conditions, not in terms of results or in light of subsequent events. *See also Herpin*, 664 So.2d 515. . . . He must, however, exercise the degree of skill ordinarily employed by his peers under like circumstances, using reasonable care and his best judgment in performing the skill. *Id.* (citing *Matthews v. La. State University Medical Center in Shreveport*, 467 So.2d 1238 (La.App. 2 Cir.1985)).

In the case sub judice, the medical review panel opined as follows:

> The testimony of Alicia Lester is in direct conflict with the testimony of Dr. Robert L. Levy and Linda Heidner, Dr. Levy's dental assistant, regarding services requested by Ms. Lester and the conversations and examinations which took place prior to the extraction of Ms. Lester's teeth on October 20, 2003. This conflict in testimony creates material issues of fact which must be resolved in order to determine the issue of liability.

3

The opinion of the panel concludes "that there are material issues of fact, not requiring expert opinion, bearing on liability for consideration by the court."

In *Pecot v. Calcasieu-Cameron Hospital Service District*, 03-1102, p. 1 (La.App. 3 Cir. 2/18/04), 867 So.2d 56, 58, *writ denied*, 04-719 (La. 5/7/04), 872 So.2d 1085, we recounted the standard of review applicable to this case:

> Inasmuch as this appeal turns on factual determinations by the trial judge, we must review the record using the manifest error-clearly wrong standard of appellate review. That standard was recently reviewed by our supreme court in *Cenac v. Public Access Water Rights Assn.*, 02-2660, pp. 9-10 (La.6/27/03), 851 So.2d 1006, 1023:
>
> > In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard which precludes the setting aside of a trial court's finding of fact unless those findings are clearly wrong in light of the record reviewed in its entirety. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A reviewing court may not merely decide if it would have found the facts of the case differently, the reviewing court should affirm the trial court where the trial court judgment is not clearly wrong or manifestly erroneous. *Ambrose v. New Orleans Police Department Ambulance Service*, 93-3099, 93-3110, 93-3112, p. 8 (La.7/5/94), 639 So.2d 216, 221.

At the trial of this matter, the depositions of Drs. David M. Carlton and Leo R. Regan, both oral surgeons and members of the medical review panel, were introduced into evidence. Also introduced was the transcript of a telephone interview between counsel for the parties and the members of the medical review panel. This transcript included remarks by Dr. James Pollard, the third member of the panel. The plaintiff argues that the admission of this transcript was error. We disagree, the telephonic communication was held at the behest of the plaintiff's counsel in his office and was recorded by a certified court reported. The plaintiff did not object at that time; therefore, any objection she may have had is waived. Even if, arguendo, one

4

considers her argument valid, the information contained in this brief transcript is cumulative, and its admission, if error, was harmless.

All three members of the medical review panel agreed that if one believed Ms. Lester's version of what happened in Dr. Levy's office on the morning of October 20, 2003, then the actions by Dr. Levy fell below the standard of care. If, on the other hand, one believed the testimony of Dr. Levy and of Ms. Heidner, then, there was no breach of the standard of care. The members of the panel described the standard of care for an oral surgeon to extract a tooth (or teeth) as follows: first, having an x-ray of the patient's mouth which was less than one year old—Dr. Levy had an x-ray of Ms. Lester's mouth which was six months old. Next, examining the patient—which both Dr. Levy and Ms. Heidner stated he did. The plaintiff argued that upon examing a patient, the oral surgeon had a duty to inform the patient if, in his opinion, he thought a tooth, which was to be extracted ,was salvageable. The panel agreed that such was the standard of care if the patient was a "walk-in" off the street, but stated that such was NOT the case with a referred patient, such as Ms. Lester. In the case of a referred patient, the question of whether a tooth was salvageable was between the patient and his/her general dentist. Oral surgeons were not to "second-guess" a patient's general dentist. The last duty the oral surgeon had, to meet the standard of care, was to know which tooth/teeth to extract. Ms. Lester claims that Dr. Levy could not have known which teeth to extract because she forgot her referral slip, and he did not call Dr. Gauthier to obtain this information. Dr. Levy and Ms. Heidner testified that Ms. Lester was offered a later appointment so she could return with her referral slip, but that Ms. Lester declined, stating that she knew which teeth had to be extracted. Also, Dr. Levy and Ms. Heidner both testified that Ms. Lester pointed at

5

the teeth she wanted extracted and confirmed her choices to Dr. Levy when he pointed to the corresponding teeth on her x-ray. Ms. Lester denies pointing to any specific tooth(teeth), claiming it would have impossible for her to do so.

Entwined with the identifying of the teeth which were to be pulled is the issue of consent. Ms. Lester claims she never gave her consent to have teeth numbers 3, 15, and 16 extracted. The "general" consent portion is easily handled. Ms. Lester signed a continuing consent form on her first visit to Dr. Levy in June 2003. She admits signing the form and stated that she never revoked it.

Accordingly, at this point, we reach the same conclusion as did the medical review panel—the case hinges on whether, on October 20, 2003, Ms. Lester pointed to her teeth numbers 3, 15, and 16, and asked Dr. Levy to extract them. The trial court found that she did. This is a finding of fact reviewable under the manifest error standard of review.

We find two things in the record which particularly impress us and convince us the trial court did not err. The first is Ms. Lester's lack of explanation as to how Dr. Levy would have known which teeth to pull if she did not tell him. Neither oral surgeons nor general dentists extract teeth without input from their patients. The second is the physical evidence supporting the testimony of Dr. Levy and Ms. Heidner that Ms. Lester pointed to the particular teeth she wanted removed and rebutting Ms. Lester's testimony that it would have been impossible for her to do so. The evidence shows that on October 20, 2003, tooth number 3 stood alone—teeth numbers 2 and 4 having been previously removed. Teeth numbers 15 and 16 are the last two teeth in the left-upper jaw. They also stood alone—tooth number 14 having

6

been previously removed. Thus, the teeth to which Ms. Lester allegedly pointed were isolated and easily identified by pointing to them.

Accordingly, for the reasons stated, we find no manifest error in the judgment of the trial court. All costs of this appeal are assessed against the plaintiff, Alicia Lester.

**AFFIRMED.**