NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 09-721

DAVID DUNNEHOO

VERSUS

DR. R. DALE BERNAUER, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2003-2036
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Billy Howard Ezell, J. David Painter, and Shannon J. Gremillion, Judges.

AFFIRMED.

Charles Jerome Boudreaux, Jr.
J. Michael Fussell, Jr.
Preis & Roy
P. O. Drawer 94-C
Lafayette, LA 70509
(337) 237-6062
Counsel for Defendants/Appellees:
Dr. R. Dale Bernauer
St. Paul Mutual Insurance Company

**Sera Hearn Russell, III**
**P. O. Box 53866**
**Lafayette, LA 70505-3866**
**(337) 237-7171**
**Counsel for Plaintiff/Appellant:**
**David Dunnehoo**

**EZELL, JUDGE**.

This is an appeal in a medical malpractice case. David Dunnehoo appeals a trial court judgment which found that Dr. Dale Bernauer did not breach the standard of care when performing an anterior lumbar interbody fusion on him in which his left ureter was torn. Mr. Dunnehoo complains that the trial judge erred in his assessment of the expert testimony presented by both sides.

## FACTS

Mr. Dunnehoo was a patient of Dr. Dale Bernauer, an orthopedic surgeon. In 2000, he was diagnosed with a herniated nucleus pulposus at L5/S1. It was decided that he was a candidate for an anterior lumbar interbody fusion (ALIF). The procedure was performed on March 21, 2000.

An ALIF is a fusion performed on the spine in which the surgeon approaches the back from the front. The assistance of a general surgeon is required who makes an incision in the abdomen and then pushes the contents to the side to allow the orthopedic surgeon access to the spine. Retractors are used to keep the contents of the abdomen out of the way. During this particular procedure, Dr. Bernauer operated through tubes that are placed in the disk space after it is cleaned out. Fluoroscopy, a live-time x-ray, is used to perform the procedure once the tubes are in place. Once the orthopedic surgeon completes the fusion, the tubes are removed and the general surgeon closes the abdomen. Dr. Joseph O'Donnell was the general surgeon who assisted Dr. Bernauer.

Prior to the procedure, Dr. O'Donnell noted that the left ureter was identified and noted to be functioning properly. During closure, an inspection revealed that the left ureter had been injured. Dr. Tom Alderson, a urologist, was called in to perform a repair to the ureter before closure.

1

Following an unanimous medical review panel opinion which found that Dr. Bernauer did not breach the standard of care in his treatment of Mr. Dunnehoo, Mr. Dunnehoo filed a medical malpractice claim on April 23, 2003, against Dr. Bernauer and his medical liability insurer, St. Paul Mutual Insurance Company, alleging that Dr. Bernauer had torn the ureter during the procedure. A trial was held on January 23, 2009. After taking the matter under advisement, the trial judge found that Mr. Dunnehoo failed to show that it is more probable than not that Dr. Bernauer failed to exercise reasonable care and diligence in performing his surgery. Judgment was signed in favor of Dr. Bernauer and his insurer. Mr. Dunnehoo filed an appeal in this court.

## EXPERT TESTIMONY

Both of Mr. Dunnehoo's assignments of error concern the weight the trial court gave to the testimony of the two experts who testified regarding whether Dr. Bernauer breached the standard of care in performing the ALIF on Mr. Dunnehoo. He claims that the trial court erred in failing to assign any substantial weight to the testimony of his expert, Dr. Frank Barnes, and in assigning any weight to the testimony of Defendants' expert, Dr. Scott Blumenthal.

In written reasons for the judgment the trial judge explained his reliance on Dr. Blumenthal's conclusions as follows:

> In this case, the question of whether Dr. Bernauer breached the standard of care by failing to exercise reasonable care and diligence is to be determined by the testimony of each party's expert witness. Based on their testimony and qualifications, the Court finds the defendant's expert, Dr. Blumenthal, more convincing on the subject of ALIF surgeries. Additionally, because Mr. Dunnehoo's ureter was torn, and not cut, the Court finds that it is more likely that the injury resulted from one of the scenarios described by Dr. Blumenthal, rather than from negligence on the part of Dr. Bernauer during the main portion of the surgery.

2

Pursuant to La.R.S. 9:2794, a plaintiff in a medical malpractice action must prove, by a preponderance of the evidence, (1) the standard of care that applies; (2) that the doctor breached that standard of care; and (3) that the breach caused the plaintiff's injuries. *Lanningham v. Walton*, 06-1103 (La.App. 3 Cir. 2/7/07), 950 So.2d 922. In order to establish the applicable standard of care and whether or not that standard was breached, testimony from medical professionals is necessary. *Strange v. Shroff*, 37,353 (La.App. 2 Cir. 7/16/03), 850 So.2d 1077.

> The record in medical malpractice cases contains testimony of a number of expert witnesses. The trier of fact is in the best position to evaluate and weigh the testimony of expert witnesses. Therefore, the evaluations of credibility and the weight given to each expert's opinion by the trial court will be given great deference by a reviewing court. "When the expert opinions contradict concerning compliance with the applicable standard of care, the trial court's conclusions on this issue will be granted great deference. It is the sole province of the factfinder to evaluate the credibility of such experts and their testimony." *Charpentier v. Lammico Ins. Co.*, 606 So.2d 83, 87 (La.App. 3 Cir.1992).

*Langlinais v. Dearman*, 07-44, p. 5 (La.App. 3 Cir. 5/30/07), 957 So.2d 945, 949.

Both doctors' opinions were introduced by deposition testimony. Dr. Frank Barnes, an orthopedic surgeon, testified that he had never performed an ALIF but had observed four or five of the procedures. Dr. Barnes agreed that Dr. Alderson was of the opinion that the ureter was torn as opposed to cut because Dr. Alderson indicated in his deposition that the ends were frayed and he had to cut the ends to clean them up. Dr. Barnes agreed that Dr. Alderson was of the opinion that it was a "traction tension tear." Dr. Barnes also agreed that a traction tear to the left ureter is a potential risk of retraction of the peritoneal structure during the exposure for the ALIF. Dr. Barnes then stated that he did not know if Dr. Bernauer cut or tore the ureter during the procedure, but he knew Dr. Bernauer did it because the general surgeon found the ureter intact when he turned it over to Dr. Bernauer. Dr. Barnes opined that Dr.

3

Bernauer lost track of where the ureter was and it got in the way of one of his instruments.

Dr. Scott Blumenthal, also an orthopedic surgeon, has performed close to 1,000 ALIF procedures. Dr. Blumenthal agreed that frayed edges of the ureter indicated some type of tear injury and not a cut. He explained that he has seen damage to the organs, blood vessels, and ureters with the use of retractors during surgery. Dr. Blumenthal testified that a traction injury is consistent with a tear.

Dr. Blumenthal said the answer to how the injury occurred is not in the documents. He offered three explanations for the cause of the injury. He stated that some of the tissue of the ureter could have seeped underneath the tubes and got caught in the process. Dr. Blumenthal explained that the orthopedic surgeon relies on the general surgeon to get all of the structures out of the way. Once the tubes are in place, most of the focus is on the screen utilizing the fluoroscopy to perform the procedure. A second possibility is that the ureter tears from tension initially placed on it by the retractors and the general surgeon does not see it because it is behind the retractors. A third possibility was that the ureter gradually tore during the procedure from the tension placed on it by the retractors.

Based on all three of these possibilities, Dr. Blumenthal did not think that Dr. Bernauer breached the standard of care in his performance of the ALIF on Mr. Dunnehoo. He further stated that he did not think it was below the standard of care to have a complication such as a torn ureter during an ALIF. Dr. Blumenthal testified that it is a rare complication but it does occur.

After reviewing the doctors' testimony, we find no error in the trial court's reliance on Dr. Blumenthal's testimony as opposed to Dr. Barnes' testimony. We further find no error in the trial court's determination that Dr. Bernauer did not breach

4

the standard of care in his performance of an ALIF on Mr. Dunnehoo. The evidence clearly establishes that the ureter was torn sometime during the procedure. In all scenarios presented by Dr. Blumenthal, Dr. Bernauer did not breach the standard of care.

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to David Dunnehoo.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules-Court of Appeal. Rule 2-16.3.