# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 17-1039


**KAY HANAGRIFF, INDIVIDUALLY, ETC., ET AL.**

**VERSUS**

**PREFERRED PROFESSIONAL INSURANCE COMPANY, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2012-2388
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Van H. Kyzar, Judges.


**AFFIRMED.**

**Daniel E. Broussard, Jr.**
**Broussard, Halcomb & Vizzier**
**429 Murray Street, Suite 3**
**P. O. Box 1311**
**Alexandria, LA 71309-1311**
**(318) 487-4589**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Kay Hanagriff**
    **Kay Hanagriff, o/b/o Abigail Frick**
    **Alexa Yanez**

**Elizabeth Fontenot Shea**
**J. Gregory Bergstedt**
**Fraser, Wheeler, Bergstedt & Courtney, LLP**
**4350 Nelson Road**
**Lake Charles, LA 70605**
**(337) 478-8595**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Preferred Professional Insurance Company**
    **Shondra L. Smith, M.D.**

**SAUNDERS, Judge.**

This is a case involving a medical malpractice action. Plaintiff instituted an action against her physician and the physician's professional liability insurance carrier (collectively "Defendants"), alleging that Defendants breached the applicable standard of care in the care and treatment of Plaintiff on September 22, 2008.

On March 2, 2015, this case came before a jury. After a four-day trial, on March 5, 2015, the jury rendered a verdict adverse to Plaintiff.

On March 26, 2015, Plaintiff filed a Motion for Judgment Notwithstanding the Verdict, Or in the Alternative, Motion for New Trial. The motion was heard on June 2, 2017. Judgment was rendered denying the motion on June 21, 2017.

Plaintiff now appeals that judgment. Her argument is that Defendants failed to furnish Plaintiff with diligent and skillful care; failed to adequately monitor Plaintiff given her expressed symptoms to ensure that she did not fall from the examination table while under Defendants' care; failed to exercise the requisite amount of care and supervision that Plaintiff's condition required; failed to take reasonable steps to promote continuity of appropriate medical care of Plaintiff; and failed to exercise the reasonable degree of skill and competency ordinarily employed by members of the medical profession practicing in the same specialty as Defendants.

**FACTS AND PROCEDURAL HISTORY:**

On September 22, 2008, Plaintiff, Kay Hanagriff ("Ms. Hanagriff"), underwent two punch biopsies at the office of Shondra L. Smith, M.D. ("Dr. Smith"), a dermatologist. During the procedure, Ms. Hanagriff advised Dr. Smith that she felt queasy, and Dr. Smith instructed Nurse Mindy Walling ("Nurse Walling"), who was assisting her, to place an ice pack on Ms. Hanagriff's neck,

which she did. Ms. Hanagriff stated that the ice pack was helping and that she was starting to feel better.

After the procedure, which was completed in approximately five to ten minutes, Nurse Walling remained in the exam room placing bandages on Ms. Hanagriff as she continued to talk to her to ensure that she was feeling better; Ms. Hanagriff confirmed that she was. Prior to momentarily leaving the exam room, Nurse Walling instructed Ms. Hanagriff to remain lying on the exam table until a staff member came back to check on her.

Shortly thereafter, Dr. Smith instructed Diana Perry Beaugh, LPN ("Nurse Beaugh") to check on Ms. Hanagriff, which she did. Nurse Beaugh noted that Ms. Hanagriff was "awake, alert and oriented", and in response to Nurse Beaugh's inquiry as to how she was feeling, Ms. Hanagriff stated "I feel much better." At that time, Nurse Beaugh informed Ms. Hanagriff that she would have her sit up with her feet extended for a short period and adjusted the exam table accordingly to allow Ms. Hanagriff to do so. Prior to leaving the exam room, Nurse Beaugh warned Ms. Hanagriff not to get off the exam table or try to stand until a staff member came in to assist her.

Nurse Walling, who was with another patient in the exam room next to the one Ms. Hanagriff occupied, heard a noise that she described as "metal-on-metal" which she determined to be the sound of the leg extensions on the exam table being pushed in. When Nurse Walling entered Ms. Hanagriff's exam room, she was off the exam table and appeared to be falling to the floor, so she took Ms. Hanagriff by the arm and gently assisted her to the floor, where she remained until Dr. Smith entered the room to evaluate her. When Dr. Smith informed Ms. Hanagriff that she was going to write a prescription for a CT scan of the head and cervical spine, Ms.

Hanagriff refused, stating "I just want to go home." Ms. Hanagriff also repeatedly stated that she was embarrassed about the situation.

Approximately fifteen to twenty minutes later, Dr. Smith's office manager and licensed pharmacist, Cindy Reed ("Ms. Reed"), entered the exam room to take Ms. Hanagriff's blood pressure, which was normal. At that time, Ms. Hanagriff complained that her head hurt when she moved her neck.

Approximately ten minutes later, Dr. Smith instructed her billing manager, Kissney Traub ("Ms. Traub"), to take Ms. Hanagriff to Women's & Children's Hospital emergency room for further evaluation. Upon their arrival, Dr. Akanbi, the ER physician, examined Ms. Hanagriff and performed a CT scan of the head and cervical spine. Those tests revealed no significant abnormalities, except muscle spasms. Later that day, Dr. Akanbi informed Dr. Smith that he had prescribed Ms. Hanagriff a muscle relaxer and a soft neck brace, and that she would be fine.

The following day Dr. Smith called Ms. Hanagriff to check on her status, and spoke with her mother, who told her that she was sleeping. Later that day, Dr. Smith placed another call to Ms. Hanagriff's cell phone and left a message.

On September 26, 2008, Dr. Smith spoke with Ms. Hanagriff regarding her biopsy results. Ms. Hanagriff reported that her neck was sore, that she was having trouble sleeping, and that she had been seen by her primary care physician, who told her that she had a muscle strain. When Dr. Smith asked Ms. Hanagriff whether she had any bruising, she replied that she did not.

On September 29, 2008, Dr. Smith saw Ms. Hanagriff for the last time. At that time, Ms. Hanagriff stated that she was still slightly stiff in the neck but had returned to work.

On or about September 22, 2009, Ms. Hanagriff filed a complaint with the Louisiana Patient's Compensation Fund ("PCF"), requesting a review of the medical care provided to her by Dr. Smith and her staff on September 22, 2008.

On February 13, 2012, the Medical Review Panel met and rendered a unanimous opinion in favor of Dr. Smith, finding neither Dr. Smith nor her staff had breached the standard of appropriate care as charged in Ms. Hanagriff's complaint.

On May 31, 2012, Ms. Hanagriff instituted this lawsuit against Defendants. The case, which was tried before a jury on March 2 through March 5, 2015, resulted in a verdict adverse to Ms. Hanagriff.

On or about March 26, 2015, Ms. Hanagriff filed a Motion for Judgment Notwithstanding the Verdict Or, in the Alternative, Motion for New Trial ("JNOV"). The motion was heard on June 2, 2017. Judgment was rendered denying the motion on June 21, 2017.

Ms. Hanagriff timely filed a motion for devolutive appeal. Pursuant to that motion, Ms. Hanagriff is presently before this court alleging five assignments of error.

## ASSIGNMENTS OF ERROR:

1. The jury erred in not finding that the actions of Dr. Smith and her staff in truth plaintiff, Kay Hanagriff violated the applicable standard of care.

2. The facts induced at trial do not support the jury's findings that Dr. Smith and her staff did not breach the applicable standard of care.

3. The facts induced at trial is a matter of law shows that the procedures used by Dr. Smith and her staff constituted negligence in that they failed to guard against injury to a patient from a reasonably foreseeable contingency.

4.    The trial court erred in denying plaintiff's Motion for Judgment Not Withstanding the verdict Or, In the Alternative, Motion for New Trial.

5.    The jury erred in failing to render a verdict in favor of plaintiff, Kay Hanagriff in awarding the damages that she sought.


## ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, AND THREE:

We will address assignments of error one, two, and three together as they all assert that the jury erred in finding that the actions of Dr. Smith and her staff did not violate the applicable standard of care by failing to guard against injury to a patient from a reasonably foreseeable contingency. We find no merit to these contentions.

In *Martin v. East Jefferson General Hosp.*, 582 So.2d 1272, 1276-1277 (La. 1991), (citations omitted), the Louisiana Supreme Court outlined the burden of proof and appellate standard of review in medical malpractice actions, as follows:

> In a medical malpractice action against a physician [T]he plaintiff must first establish by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and must then establish a causal relationship between the alleged negligent treatment and the injury sustained. Resolution of each of these inquiries are determinations of fact which should not be reversed on appeal absent manifest error. [. . .]

> [I]f the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. . . . [W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

In *Sharpentier v. LAMMICO Ins. Co.*, 606 So.2d 83, 87 (La.App. 3 Cir. 1992), (citations omitted), this court stated:

> The law does not require perfection in medical diagnoses and treatment. On the contrary, a doctor's professional judgment and conduct must be evaluated in terms of reasonableness under the then

existing circumstances, not in terms of results or in light of subsequent events. When the alleged negligence of a specialist is at issue, only those qualified in that specialty may offer expert testimony and evidence of the applicable standard of care. When the expert opinions contradict concerning compliance with the applicable standard of care, the trial court's conclusions on this issue will be granted great deference. It is the sole province of the factfinder to evaluate the credibility of such experts and their testimony.

What is crucial is that our review of the record reveals that the contemporaneous medical charting and witness testimonies reveal that when Ms. Hanagriff indicated that she was beginning to feel "queasy or nauseated," Dr. Smith recognized the symptoms as a possible pre-syncopal episode, and reacted appropriately by:

1. Instructing Nurse Walling during the procedure to apply a cold pack to Ms. Hanagriff's neck, which resulted in Ms. Hanagriff's admittance that she was feeling better;

2. Instructing Ms. Hanagriff after the procedure to lay flat on the exam table (with leg extensions out), to which she momentarily complied;

3. Instructing her staff to closely monitor Ms. Hanagriff, which they did; and

4. Advising Ms. Hanagriff not to attempt to get up from the exam table without assistance, which she disregarded.

Equally crucial is that no one witnessed Ms. Hanagriff's fall. Nurse Walling testified that the alleged fall never occurred, but rather, that she assisted Ms. Hanagriff to the floor. In addition, the contemporaneous medical charting and witness testimonies further reveal that after Ms. Hanagriff indicated that she was feeling better, Dr. Smith's staff reacted appropriately by:

1. Allowing Ms. Hanagriff to semi-elevate herself after she admitted that she was feeling better;

2. Continuing to closely monitor Ms. Hanagriff to ensure that she progressively continued to feel better, which she repeatedly confirmed that she was feeling better;

3. Continuing to caution Ms. Hanagriff not to attempt to get up from the exam table without assistance, which she ultimately disregarded;

4. Only momentarily leaving Ms. Hanagriff alone in the exam room and only after Ms. Hanagriff repeatedly confirmed that she was feeling better;

5. Immediately coming to Ms. Hanagriff's assistance when it became apparent that she was attempting to get up from the exam table unassisted.

To sustain her burden in this case, Ms. Hanagriff called medical expert Dr. Pearson G. Lang, Jr., a board certified dermatologist practicing in Charleston, South Carolina, who testified as follows:

> Q. All right. Do you have an opinion as to whether or not Dr. Smith and her staff met the standard of care in dermatology?
>
> A. Well, I think the problem was that when they placed Mrs. Hanagriff in a sitting position rather than being there monitoring her. First of all, I would've checked the blood pressure from the beginning, which I don't think was done, at least the records don't indicate that, but that bring [*sic*] aside, when she put in a semi-sitting position things can change and so they can go from feeling okay until [*sic*] feeling queasy again or light-headed and that being the case somebody ought to be in there to monitor them and not put them in that position and then just walk out the room.

Dr. Lang's sole criticism of Dr. Smith's care of Ms. Hanagriff <u>after</u> the procedure was that the patient was left alone momentarily when she was (allegedly) not feeling better:

> Q. So in reviewing this case the only criticism you have is that the patient complained of faintness and was not feeling well and for a patient like that, they should not have be [*sic*] left unattended until it can be reasonable [*sic*] ascertained that the patient has recovered sufficiently to sit up, stand up, ambulate and leave?
>
> A. That's correct.

To be sure, Dr. Lang's criticism was based only on Ms. Hanagriff's own uncorroborated testimony. Ms. Hanagriff's testimony, stating that after the procedure she continued to "feel bad" and that the moment Nurse Beaugh left her

7

alone in the exam room, she allegedly felt a "wave of nausea," began sweating, and then "everything went black," contradicts her earlier testimony, in which she stated that during the procedure she began to feel better after the ice pack was placed on her neck. Likewise, contrary to her earlier testimony, Ms. Hanagriff then testified that she had no memory of what happened from the time Nurse Beaugh left the room momentarily to the time she "came to" and was lying on the floor of the exam room. In addition, Nurse Walling, who testified that Ms. Hanagriff had not fallen, but rather, that she had assisted her to the floor to prevent her from falling, also contradicts Ms. Hanagriff's testimony that she fell from the exam table.

Contrary to Ms. Hanagriff's argument, we find that the jury had a clear grasp of the evidence, and/or lack thereof. The jury did not believe that Dr. Smith and/or her staff breached the standard of care to guard against injury to Ms. Hanagriff for a reasonably foreseeable contingency, in this case, an alleged unwitnessed fall. Rather, the jury correctly concluded that Ms. Hanagriff failed to carry the three-prong burden of proof: to establish the standard of care ordinarily practiced by physicians within the specialty of dermatology; a violation by Dr. Smith of that standard of care; and a causal connection between Dr. Smith's negligence and Ms. Hanagriff's alleged injuries. As such, we find that the contemporaneous medical charting and the testimony of Dr. Smith and her staff, as well as the testimony of Dr. Smith's expert witnesses, provide a reasonable basis for the jury's findings. Accordingly, we affirm the trial court's ruling on these issues.

**ASSIGNMENT OF ERROR NUMBER FOUR:**

In her fourth assignment of error, Ms. Hanagriff contends that the trial court erred in denying her Motion for Judgment Notwithstanding the Verdict Or, in the Alternative, Motion for New Trial. We find no merit to this contention.

In *Guillory v. Progressive Ins. Co.*, 12-1284, pps. 10-11 (La.App. 3 Cir. 7/3/13), 117 So.3d 318, 326 (citations omitted), this court stated:

> A motion for JNOV should be denied if there is evidence opposed to the motion of such quality and weight that reasonable persons in the exercise of impartial judgment might reach different conclusions. In making this determination, all reasonable inferences or factual questions should be resolved in favor of the non-moving party. The rigorous standard for granting a motion for JNOV is based on the principle that "[w]hen there is a jury, the jury is the trier of fact." A motion for JNOV should be granted only when the evidence points so strongly in favor of the moving party such that reasonable men could not reach different conclusions.

The jury had the opportunity to hear evidence from Dr. Smith and her witnesses, including her expert witness, as well as from Ms. Hanagriff, her treating physicians, and her expert witnesses. They analyzed the medical records and returned a unanimous verdict finding that the evidence presented at trial did not support the finding that Dr. Smith and her staff breached the applicable standard of care in the care and treatment of Ms. Hanagriff. Great deference must be given to the trier of fact's findings. It cannot be said that the evidence points so strongly in favor of the moving party such that reasonable men could not reach different conclusions. The jury was reasonable in its determination.

The testimony of Dr. Smith and her witnesses, including her expert witness, was corroborated by the medical records in evidence and clearly contradicted the testimony of Ms. Hanagriff. The medical records indicated that Ms. Hanagriff stated on more than one occasion that the ice pack provided to her during the procedure was helping, that she was feeling better, and she was showing objective signs of improvement (her color was coming back, etc.). In contrast, there is nothing documented in the contemporaneous chart by anyone that Ms. Hanagriff continued to feel "queasy" after the procedure, or that she was complaining of "waves of nausea", or that she was sweating. In fact, according to the evidence in

the record, Ms. Hanagriff's condition was just the opposite after the procedure. As Dr. Smith and her witnesses testified, Ms. Hanagriff continued to improve as Dr. Smith and her staff continued through the step-by-step protocol pursuant to office policy and the applicable standard of care. As such, we find that the trial court properly denied Ms. Hanagriff's JNOV.

## ASSIGNMENT OF ERROR NUMBER FIVE:

In her fifth assignment of error Ms. Hanagriff contends that the jury erred in failing to render a verdict in her favor and in failing to award the damages that she sought. Our findings in assignments of error numbers one through four, that the actions of Dr. Smith and her staff did not violate the applicable standard of care in the care and treatment of Ms. Hanagriff, pretermits this assignment of error.

## CONCLUSION:

Kay Hanagriff asserts five assignments of error as to why the trial court and/or jury erred in finding that the actions of Dr. Smith and her staff did not violate the applicable standard of care by failing to guard against injury to Ms. Hanagriff from a reasonably foreseeable contingency; by failing to grant Ms. Hanagriff's Motion for Judgment Notwithstanding the Verdict Or, in the Alternative, Motion for New Trial; by failing to render a verdict favorable to Ms. Hanagriff; and in failing to award the damages that she sought. Finding no merit to Ms. Hanagriff's first four assignments of error, we affirm the trial court and/or jury's rulings on these issues. Our findings in assignments of error numbers one through four pretermits a finding in assignments of error numbers five that the jury erred in failing to render a verdict in favor of Ms. Hanagriff, and in failing to award damages. Accordingly, we affirm the trial court's ruling on this issue.

10

Costs of these proceedings are assessed to Ms. Kay Hanagriff.

**<u>AFFIRMED</u>**.